UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SHAYLON D. FERGUSON,

        Plaintiff,

    v.

NANCY A. BERRYHILL,

        Defendant.

Case No. 17-cv-01491-MEJ

**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 15, 18

## INTRODUCTION

Plaintiff Shaylon D. Ferguson brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of Defendant Nancy A. Berryhill, the Acting Commissioner of Social Security, denying Plaintiff's claim for disability benefits. Pending before the Court are the parties' Cross-Motions for Summary Judgment. Pl.'s Mot., Dkt. No. 15; Def.'s Mot., Dkt. No. 18. Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument. Having carefully reviewed the parties' positions, the Administrative Record (AR), and the relevant legal authority, the Court hereby **GRANTS IN PART** Plaintiff's Motion, **DENIES** Defendant's Cross-Motion, and **REMANDS** the action for the reasons set forth below.

## SOCIAL SECURITY ADMINISTRATION PROCEEDINGS

**A.    Background**

Plaintiff has applied for and been denied disability benefits multiple times since 2007 based on back pain, headaches, depression, and insomnia.

On February 19, 2013, Plaintiff filed a claim for Supplemental Security Income, alleging disability beginning on February 1, 2001. The Social Security Administration (SSA) denied Plaintiff's claim initially and upon reconsideration, finding that Plaintiff did not qualify for disability benefits. Plaintiff requested a hearing before an Administrative Law Judge (ALJ). ALJ

John J. Flanagan conducted a hearing on June 15, 2015. Plaintiff testified in person at the hearing and was represented by counsel, Alex Panutich. The ALJ also heard testimony from Vocational Expert (VE) Jeffrey Malmuth. The ALJ left the record open to obtain Plaintiff's records from Pathways to Wellness, recognizing those were important because they related to Plaintiff's psychiatric medications. AR 71.

## B.    The ALJ's Findings

The regulations promulgated by the Commissioner of Social Security provide for a five-step sequential analysis to determine whether a Social Security claimant is disabled.[1] 20 C.F.R. § 404.1520. The sequential inquiry is terminated when "a question is answered affirmatively or negatively in such a way that a decision can be made that a claimant is or is not disabled." *Pitzer v. Sullivan*, 908 F.2d 502, 504 (9th Cir. 1990). During the first four steps of this sequential inquiry, the claimant bears the burden of proof to demonstrate disability. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). At step five, the burden shifts to the Commissioner "to show that the claimant can do other kinds of work." *Id.* (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).

The ALJ must first determine whether the claimant is performing "substantial gainful activity," which would mandate that the claimant be found not disabled regardless of medical condition, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(i), (b). Here, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since February 19, 2013. AR 25.

At step two, the ALJ must determine, based on medical findings, whether the claimant has a "severe" impairment or combination of impairments as defined by the Social Security Act. 20 C.F.R. § 404.1520(a)(4)(ii). If no severe impairment is found, the claimant is not disabled. 20 C.F.R. § 404.1520(c). Here, the ALJ determined that Plaintiff had the following severe

---

[1] Disability is "the inability to engage in any substantial gainful activity" because of a medical impairment which can result in death or "which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

impairments: obesity, left knee degenerative joint disease, and an affective disorder. AR 26.

If the ALJ determines that the claimant has a severe impairment, the process proceeds to the third step, where the ALJ must determine whether the claimant has an impairment or combination of impairments that meet or equals an impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1 (the "Listing of Impairments"). 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering age, education and work experience. 20 C.F.R. § 404.1520(d). Here, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets the listings. AR 26-29.

Before proceeding to step four, the ALJ must determine the claimant's Residual Function Capacity (RFC). 20 C.F.R. § 404.1520(e). RFC refers to what an individual can do in a work setting, despite mental or physical limitations caused by impairments or related symptoms. 20 C.F.R. § 404.1545(a)(1). In assessing an individual's RFC, the ALJ must consider all of the claimant's medically determinable impairments, including the medically determinable impairments that are nonsevere. 20 C.F.R. § 404.1545(e). Here, the ALJ determined that Plaintiff has the RFC to perform light work with some non-exertional limitations: she can occasionally stoop, bend, kneel, crouch, and climb and engage in simple repetitive tasks with little to no contact with the public. AR 29.

The fourth step of the evaluation process requires that the ALJ determine whether the claimant's RFC is sufficient to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f). Past relevant work is work performed within the past 15 years that was substantial gainful activity, and that lasted long enough for the claimant to learn to do it. 20 C.F.R. § 404.1560(b)(1). If the claimant has the RFC to do his past relevant work, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). Here, the ALJ determined that Plaintiff could not perform past relevant work as a material handler, a picker, and a packer. AR 34.

In the fifth step of the analysis, the burden shifts to the Commissioner to prove that there are other jobs existing in significant numbers in the national economy which the claimant can

perform consistent with the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g); 404.1560(c).  The Commissioner can meet this burden by relying on the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, Subpt. P, App. 2.  *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).  Here, based on the testimony of the VE, Plaintiff's age, education, work experience, and RFC, the ALJ determined Plaintiff could perform unskilled, exertionally light occupations such as laundry worker and electrical accessories assembler, both of which were available in significant numbers in the national economy.  AR 35.

## C.      ALJ's Decision and Plaintiff's Appeal

On August 3, 2015, the ALJ issued an unfavorable decision finding that Plaintiff was not disabled.  This decision became final when the Appeals Council declined to review it on January 27, 2017.  Having exhausted all administrative remedies, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g).  On August 31, 2017, Plaintiff filed the present Motion for Summary Judgment.  On November 13, 2017, Defendant filed a Cross-Motion for Summary Judgment.  Plaintiff filed a Reply on November 22, 2017.  Dkt. No. 19.

## LEGAL STANDARD

This Court has jurisdiction to review final decisions of the Commissioner pursuant to 42 U.S.C. § 405(g).  The ALJ's decision must be affirmed if the findings are "supported by substantial evidence and if the [ALJ] applied the correct legal standards."  *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (citation omitted).  "Substantial evidence means more than a scintilla but less than a preponderance" of evidence that "a reasonable person might accept as adequate to support a conclusion."  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)).  The court must consider the administrative record as a whole, weighing the evidence that both supports and detracts from the ALJ's conclusion.  *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989).  However, "where the evidence is susceptible to more than one rational interpretation," the court must uphold the ALJ's decision.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

Determinations of credibility, resolution of conflicts in medical testimony, and all other ambiguities are to be resolved by the ALJ. *Id.*

Additionally, the harmless error rule applies where substantial evidence otherwise supports the ALJ's decision. *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990). A court may not reverse an ALJ's decision on account of an error that is harmless. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006)). "'[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.'" *Id.* (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

## DISCUSSION

### A.      Development of the Record

Plaintiff argues the ALJ erred by failing to obtain critical treatment records after finding ambiguities and gaps in the existing record, resulting in unsupported findings that Plaintiff's failure to seek treatment indicated her impairments were not severe and her subjecting complaints not credible, improper rejection of treating sources, and an incomplete RFC. Pl.'s Mot. at 8. Defendant responds the ALJ complied with his duty by keeping the record open for thirty days after the hearing. Def.'s Mot. at 2.

"'In Social Security cases the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered.' This duty exists even when the claimant is represented by counsel. If the ALJ thought he needed to know the basis of . . . opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physicians or submitting further questions to them." *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983), and citing 42 U.S.C. § 405(d) (1988); 20 C.F.R. § 404.950(d) (1991); 20 C.F.R. § 404.1527(c)(3)). "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Tonapetyan v. Halter*,

242 F.3d 1144, 1150 (9th Cir. 2001) (citing *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir.1998); *Smolen*, 80 F.3d at 1288).

ALJ Flanagan kept the record open for thirty days after the hearing, but only requested Plaintiff submit information from Pathways to Wellness.  AR 71 ("[T]hose are important because they relate to your medications").  The ALJ did not ask Plaintiff to submit, nor did he subpoena, records from her therapist Nadirah Stills, M.F.T.; from Dr. Saskia Van Der Wal, her primary care provider at La Clinica; or from Alta Bates Summit Medical Center, the hospital that performed many of Plaintiff's diagnostic imaging studies.  This is particularly problematic because the ALJ placed great weight on the opinion of examining psychological consultant Dr. Sokley Khoi in determining that Plaintiff's mental impairments did not significantly impact her ability to work. *See* AR 32.  But Dr. Khoi acknowledged his examination of Plaintiff was "limited in scope": "It was based on only one session of client contact in a structured environment.  Background and correlative information was considered to be limited.  It is recommended that the results of today's one-time evaluation be compared with available information from outside sources (such as past or present treatment providers. . . .)."  AR 456.  The ALJ did not follow Dr. Khoi's recommendations: the ALJ failed to obtain treatment records from these most obvious "outside sources" – Plaintiff's therapist, who saw Plaintiff on a weekly basis since November 2014, and her primary care physician, who treated Plaintiff since 2012 – so he could compare them to Dr. Khoi's assessment.  Moreover, the ALJ discounted MFT Stills' opinions and Plaintiff's credibility because he lacked these treatment records, and challenged the authenticity of MFT Stills' July 2015 letter because it was unsigned. *See* AR 30-34; *see also infra*.  As a review of the records submitted by Plaintiff's new counsel to the Appeals Council demonstrate, the treatment records did support MFT Stills' opinions expressed in her letter to the SSA, and also undermine several grounds the ALJ articulated for finding Plaintiff not entirely credible. *See infra*.  The ALJ's failure to develop the record by obtaining key treatment records accordingly was material error. *See Smolen*, 80 F.3d at 1288.

**B.** **Weighing Medical and Other Source Evidence**

1. <u>Applicable Standards</u>

"Cases in [the Ninth Circuit] distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an opinion of a treating physician should be favored over that of a non-treating physician. *Id.* at 830-31. However, a treating physician's opinion "is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). The opinion of an examining physician generally is entitled to greater weight than the opinion of a non-examining physician, *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008), and the "opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician, *Lester*, 81 F.3d at 831. *See also* 20 C.F.R. § 404.1527(c)(3) ("[B]ecause nonexamining sources have no examining or treating relationship with you, the weight we will give their medical opinions will depend on the degree to which they provide supporting explanations for their medical opinions.").

In order to reject the "uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Ryan*, 528 F.3d at 1198 (internal quotation marks and citation omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citation omitted). An ALJ can satisfy the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). "The ALJ must do more than offer [] conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citation omitted). An ALJ errs when he or she does not

7

1    explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one

2    medical opinion over another. *See Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996). In

3    other words, it is error for an ALJ not to offer a substantive basis before assigning little weight to

4    the medical opinion. *See id.* Generally, the SSA will give greater weight to an opinion that is

5    more consistent with the record as a whole. 20 C.F.R. § 416.927(c)(4).

6         The ALJ may treat opinions from "other sources" such as therapists and nurses with less

7    deference than opinions from acceptable medical sources. *See Gomez v. Chater*, 74 F.3d 967,

8    970-71 (9th Cir.1996). But opinions from other sources must be considered, and may not be

9    disregarded without comment; to discount such testimony, an ALJ "'must give reasons that are

10   germane to each witness.'" *Nguyen*, 100 F.3d at 1467 (quoting *Dodrill v. Shalala*, 12 F.3d 915,

11   919 (9th Cir. 1993)); *see Molina*, 674 F.3d at 1111; *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th

12   Cir. 2005) ("An ALJ need only give germane reasons for discrediting the testimony of lay

13   witnesses.").

14        2.    Nadirah S. Stills, M.F.T.

15        Nadirah Stills wrote a letter regarding Plaintiff's psychological state on January 27, 2015.

16   AR 709. MFT Stills explains she has been providing weekly individual psychotherapy services to

17   Plaintiff since November 3, 2014. AR 709; *see also* AR 710 (Access Program Referral Letter).

18   She treats Plaintiff's major depressive disorder and posttraumatic stress disorder (PTSD). She

19   explains Plaintiff developed PTSD after being subjected to extreme mental and physical abuse in a

20   relationship for several years. AR 709. She opines Plaintiff's symptoms of paranoia,

21   hopelessness, irritability, crying more days than not, reoccurring thoughts about traumatic events

22   and isolation cause problems with Plaintiff's daily functioning. *Id.*

23        On a January 30, 2015 assessment form, MFT Stills indicates Plaintiff experienced

24   multiple co-morbid health and mental health conditions; functionally significant paranoia,

25   delusions, hallucinations, suicidal/homicidal preoccupation or behavior in the past year;

26   significant functional impairment due to a mental condition; and seriously significant

27   depression/anxiety. AR 711. She notes Plaintiff was taking psychiatric prescriptions:

28                                                        8

Amitriptyline HCL, Seroquel, Chlorthalidone, and Bupropion HCLS. AR 713. She notes Plaintiff was not currently drinking or using caffeine, un-prescribed drugs, or illicit drugs, but was smoking a pack of cigarettes every three days. AR 714. A mental status exam (MSE) shows Plaintiff was depressed, anxious, angry, and teary more days than not; her affect was flat and restricted; her thought process was blocking; she had auditory hallucinations and suicidal ideations; and her concentration, memory, judgment, and impulse control were poor. AR 714. MFT Stills' assessment shows Plaintiff experienced severe (i.e., functions normally only with substantial effort/support) problems with her primary support group, social environment, activities of daily living, and "other psychosocial/environmental problems; moderate (i.e., functions normally with moderate effort/support) problems in occupational, housing, economic fronts; and mild (i.e., functions normal with mild effort/support) problems with education, health care services, and interaction with legal system/crime. AR 715. She opined Plaintiff's symptoms of isolation, irritability, crying more days than not, and insomnia caused major problems in Plaintiff's functioning. *Id.*

MFT Stills provided a letter in support of Plaintiff's SSI application on July 2, 2015. AR 631-32. She explains Plaintiff's primary care physician referred her due to "severe depression and suicidal thoughts." AR 631. She continues to see Plaintiff for weekly therapy sessions. *Id.* MFT Stills observes Plaintiff's mood is depressed more days than not, she does not find any pleasure in activities, has had significant weight gain, feels worthless, and cries almost every session. *Id.* Her emotional and physical states make it difficult for her to complete tasks; she often misses appointments because of her fear of leaving her home and interacting with people. *Id.* Plaintiff's primary caregiver is her daughter, with whom she lives; her family reportedly is afraid to leave her alone because of her previous suicide attempt. *Id.* MFT Stills diagnoses Plaintiff with Chronic PTSD and Major Depressive Disorder, Recurrent. *Id.* She explains the PTSD resulted from complicated unresolved grief, years of severe domestic violence, and constant exposure to community violence. *Id.* In MFT Stills' opinion, Plaintiff's "current diagnosis and symptoms qualify her to meet the requirements to receive social security benefits." AR 632. MFT Stills

does not evaluate the extent of Plaintiff's limitations in any work-related category.  *See* AR 631-32.  She closes the letter by inviting the SSA to contact her with any questions.  AR 632.

On a July 9, 2015 Client Plan Update, MFT Stills indicates Plaintiff was attending therapy consistently and that her tearfulness had decreased 20%.  AR 718.  Plaintiff's trauma and unsolved grief were still affecting her, and "reoccurring psychosocial issues have affected therapy progress."  *Id.*  Plaintiff still was having a difficult time interacting with people due to her extreme irritability caused by severe pain and depression.  *Id.*  MFT Stills reports Plaintiff had been meeting regularly with a psychiatrist at Pathways to Wellness and was in the process of finding the right dosage of psychiatric medications.  *Id.*

Insurance billing records show MFT Stills billed for 24 therapy sessions between November 3, 2014 and July 23, 2015.  AR 720-728.

b. *Analysis*[2]

The only record from MFT Stills that the ALJ had before him at the time he issued his decision was the July 2, 2015 letter.  *See* AR 32-33, 631.  He did not have the initial assessment, the Client Plan Update, or the insurance records confirming Plaintiff attended 24 sessions in less than nine months.  The ALJ gave little evidentiary weight to the opinions MFT Stills expressed in her July 2, 2015 letter because (1) MFT Stills did not provide the underlying treatment records that would allow the ALJ to determine whether her narrative statements are supported or accurate; (2) she is not an acceptable medical source; (3) she did not address Plaintiff's episodic drug and alcohol abuse, "which is a striking omission as references to it exists repeatedly in her actual treatment records"; (4) the diagnosis of PTSD is not otherwise supported by actual treatment records; (5) the statement is not signed, "and it is not clear if MFT Stills has even read or agrees

---

[2] The Court limits its review to the reasons the ALJ actually articulated in his opinion.  *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).  The Court accordingly will not address Defendant's arguments that do not reflect the reasons the ALJ actually articulated.  *See* Def.'s Mot. at 8-9.

with it"; and (6) finally, it is "at the very best brief, conclusory and inadequately supported by clinical findings."  AR 33.

Testimony from a treating therapist like MFT Stills constitutes "other source" evidence.  *See* 20 C.F.R. § 404.1513(d).  The Court accordingly reviews the record to determine whether the reasons offered by the ALJ to reject her opinions are germane.  *See supra.*

Although the July 2015 letter is unsigned, is arguably conclusory, and fails to include clinical findings, the undersigned cannot find these are germane reasons to disregard it based on this record.  To the extent the ALJ believed the July 2015 letter, which was forwarded to him by Plaintiff's attorney, was fraudulent, the ALJ could have requested a signed letter from MFT Stills, or requested a confirmation that she had, indeed, written it.  The ALJ did neither, and as discussed above, improperly failed to develop the record.  Had he obtained records from Plaintiff's long-term therapist, he would have been able to determine MFT Stills' initial in-person assessment provides much of the same information she includes in the July 2, 2015 letter, is supported by the results of an MSE and her observations of Plaintiff, and expresses the impact of Plaintiff's impairments on her daily functioning.  *See* AR 711-717.[3]  It also expresses the opinion that Plaintiff suffers from trauma and seriously significant depression and anxiety, and describes the likely cause of her PTSD.  AR 717.  If the ALJ still found the letter conclusory in light of the underlying records, he could have requested additional treatment records from the 24 sessions Plaintiff attended with MFT Stills or subpoenaed her.

Plaintiff was medicated with a number of anti-depressants and anti-anxiety drugs (*see infra*), and received talk therapy from MFT Stills on a weekly basis.  Nurse Elisabeth Collins of Pathways to Wellness, the clinic that adjusted Plaintiff's psychiatric medications, assessed Plaintiff and diagnosed her as suffering from PTSD, major depressive disorder (MDD), and

---

[3] Defendant argues the additional records "only show unremarkable findings."  Def.'s Mot. at 9.  This mischaracterizes the records.  For example, the MSE showed Plaintiff's mood was depressed, anxious and angry; her affect flat and restricted; her thought process blocking; she had auditory hallucinations and suicidal ideations; and poor concentration, memory, judgment, and impulse control.  AR 714.  MFT Stills also had moderate and severe concerns in a number of psychosocial and environmental categories.  AR 715.

insomnia. AR 627. She "[d]iscussed options for treatment of anxiety, insomnia, and depression including alternative therapies, psychotherapy, exercise and skills training. [She r]recommended amitriptyline based upon treatment history and available literature." AR 627. It is unclear why the ALJ believes the treatment records (including those from La Clinica and Pathways to Wellness) are inconsistent with the PTSD diagnosis. The undersigned also cannot find this is a germane reason for rejecting MFT Stills' opinion.

Finally, there is absolutely no evidence before the Court that Plaintiff had substance abuse issues that contributed to decompensation or psychotic symptoms. Defendant does not address this argument. The undersigned cannot find this is a germane reason.

The Court thus finds that, on the full record, the ALJ did not articulate germane reasons for rejecting the opinions of MFT Stills.

### 3. La Clinica/Saskia Van Der Wal, M.D.

#### a. Medical Evidence of Record

The AR includes treatment notes from La Clinica from March 2012 through July 2015, which show that Dr. Van Der Wal was Plaintiff's primary care provider during this period, but that Plaintiff also saw other treatment providers at the Clinic. AR 457-486, 610-618, 729-817.

In March 2012, Dr. Van Der Wal noted Plaintiff showed signs of depression and was taking Welbutrin and Seroquel for her symptoms; she also noted Plaintiff experienced chronic pain for which she was taking Vicodin; she diagnosed depression with psychotic features and chronic pain. AR 458. In taking notes for that initial consultation, Dr. Van Der Wal wrote down several medications Plaintiff had been prescribed, including medications for blood pressure and pain, and wrote a note next to one stating "told to stop" and in the margin "stopped [psychiatric] meds." AR 457. Treatment records continue to mention depression, chronic pain, insomnia, and crying. AR 458-462, 466-472, 474-478.

Dr. Van Der Wal referred Plaintiff to physical therapy for her low back pain. AR 730, 734-35.

Dr. Van Der Wal opined Plaintiff's depression complicated her pain syndrome and that her

pain would likely improve if she could control her depression; and noted that Plaintiff needed repetition to understand. AR 467-68, 472. She tried to schedule Plaintiff's visits on a day Dr. Ascari, presumably a psychiatrist, would be at the Clinic. AR 467-68, 472, 474-75, 476 ("Am at a loss as to how to further treat depression, will defer to Dr. Ascari's rec[ommendation]s. For now, supportive listening."), 478. Dr. Ascari recommended Plaintiff be referred to a social worker "for intake history, identify needs, resources and patient's motivation for [treatment and] should have regular psych[iatric] follow up." AR 723, 462; *see also* AR 461 (La Clinica physician spoke with a social worker to about increasing hours with Plaintiff). In May 2014, someone noted on Plaintiff's records that she "seems to be decompensating despite getting [illegible] meds—can you help getting her into [illegible] care? [Illegible.] Consider dual [appointment with Van Der Wal] and BMS [behavior modification specialist] (might not be willing to see BMS only)." AR 614.

### b. Analysis

The ALJ only mentioned the set of records from La Clinica (Ex. C4F, AR 457-486) that had been provided to him before the hearing, and only discussed the portion of those records that provided the diagnosis of major depressive disorder with psychotic features in the context of chronic pain and non-adherence to treatment. AR 31-32. He dismissed that diagnosis because the record did not support the assessment of psychotic features, and contained no probative evidence of the psychotic symptoms Plaintiff endorsed. AR 32. He does not otherwise reject or accept the opinions of Dr. Van Der Wal or the other physicians from La Clinica who treated Plaintiff for more than three years.

The opinions of Dr. Van Der Wal and Plaintiff's other treating physicians at La Clinica should be entitled to great weight pursuant to Social Security regulations. In fact, the ALJ did not reject Dr. Van Der Wal's opinions that Plaintiff suffered from depression, chronic pain, or insomnia; that she cried more often than not; that she needed repetition to understand; that she was taking multiple psychiatric drugs and pain medication; that she needed physical therapy for her back pain; and that her depression impacted her sufficiently even when medicated and receiving talk therapy several times a month that she would benefit from a social worker. He only rejected

13

her opinion that Plaintiff displayed psychotic features. AR 31-32. It is again worth noting the ALJ did not develop the record and thus did not have access to the full records from La Clinica before he rendered his opinion. The Court cannot find that the ALJ's summary rejection of Plaintiff's treating physician is based on either clear and convincing or specific and legitimate reasons for disregarding the limitations she identifies in the treatment records.

        4.    <u>Pathways to Wellness/N.P. Elisabeth Collins</u>

        *a. Medical Evidence of Record*

The AR includes records from Pathways to Wellness Medication Clinic from March to August 2015. AR 417, 619-629, 818-19. Nurse Collins performed an initial assessment of Plaintiff on March 3, 2015. AR 623. She documented Plaintiff's history of depression, anxiety and insomnia; that Plaintiff was seeing MFT Stills for weekly therapy but had not been taking her medications because they were not working. Nurse Collins noted Plaintiff showed irritable mood, guarded affect, and was oriented times four; no delusions, hallucinations or obsessions; linear thought process; abstract reasoning within normal limits. AR 626. She assessed mild limitations in activities of daily living (ADLs). AR 627. She assessed moderate limitations in maintaining social functioning/relationships; maintaining concentration, persistence of pace; and episodes of decompensation. *Id.* Her diagnoses were of PTSD, MDD, insomnia, and tobacco use. She recommended Amitriptyline and a follow-up visit in four weeks. AR 627-28.

On March 30, 2015, Nurse Collins performed an MSE, which showed Plaintiff was tense, agitated, her speech pressured, and her mood sad, irritable, and angry. AR 621-22.

On April 27, 2015, Nurse Collins documented significant side effects Plaintiff had experienced as a result of her medication and changed her medication to prazosin. Plaintiff's behavior was calm, her speech normal, and her mood euthymic (i.e., relatively neutral). AR 619. Her MSE was non-remarkable, except her affect was sad and tearful. AR 620.

On June 30, 2015, Nurse Collins noted no problems with Plaintiff's current medication and increased her dosage. AR 818. Her MSE was unremarkable. AR 818-19.

Although records indicate a patient encounter on August 31, 2015 (AR 417), there do not

14

appear to be any notes regarding that visit in the AR.

### b. ALJ's Weighing of Opinion

The ALJ summarized Nurse Collins' assessment of March 2015, including her findings that Plaintiff had mild restrictions with ADLs, and moderate difficulties maintaining social functioning, concentration, persistence or pace; and her diagnoses of PTSD, MDD, insomnia, tobacco use disorder, and history of partner violence. AR 32 (The ALJ did not refer to the subsequent MSEs performed by Nurse Collins). The ALJ did not indicate how he weighed Nurse Collins' opinion. *Id.* He also noted "a nurse" (Nurse Collins) rated the severity of Plaintiff's ADL limitations as "mild"; and her limitations in both social functioning and concentration, persistence or pace as "moderate". AR 34. He noted the nurse had endorsed moderate episodes of decompensation but rejected that finding because Plaintiff had not attempted to obtain care for 2.5 years. Similarly, he observed there was no evidence Plaintiff had attempted to obtain follow-up care since the March 3, 2015 intake.

### c. Analysis

Like MFT Stills, Nurse Collins is an "other source" whose opinions the ALJ could reject by articulating germane reasons. Plaintiff argues the ALJ rejected Nurse Collins' opinions, but that is not what the record reflects, at least with respect to any limitations endorsed by Nurse Collins. The ALJ did not reject the mental health diagnoses Nurse Collins made, nor did he reject the mild to moderate limitations Nurse Collins assessed. On the contrary, he limited Plaintiff to simple, repetitive tasks with little to no contact with the public. AR 29. Limiting Plaintiff to simple, repetitive tasks is consistent with Nurse Collins' finding that Plaintiff has moderate limitations in concentration, persistence, and pace. *See infra.* Limiting her to little or no contact with the public accommodates Nurse Collins' opinion that Plaintiff is moderately impaired in social functioning. *See, e.g.*, *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (ALJ adequately accounted for marked limitations in social functioning by limiting claimant to work in which there is no public contact). The undersigned agrees Nurse Collins' records are consistent with the ALJ's RFC (AR 34). There is no error here.

5.      Sokley Khoi, Ph.D.

        *a. Dr. Khoi's Opinions*

On July 17, 2013, Dr. Khoi performed a "Comprehensive Mental Evaluation [with] No Testing" of Plaintiff on behalf of the SSA.  AR 453-456.  Dr. Khoi took a clinical history, performed an MSE, and reviewed three pages of Alta Bates Summit Medical Center records dated April to December 2012 and "several pages" of records from La Clinica dated December 2012 through April 2013.  AR 454.  These records indicated Plaintiff suffered from depression, low back pain, and hypertension.  *Id.*  Dr. Khoi noted Plaintiff stated she could wash and dress herself, fix simple meals, and take public transportation, but she is limited in other ADLs due to pain; her daughter manages the finances; her usual activities include attending medical appointments, watching television, and taking naps.  AR 455.  Plaintiff was generally cooperative during the evaluation but resistant during the Folstein Mini Mental State Exam; appeared to put forth inconsistent effort; demonstrated fluctuating attention and concentration; had monotone speech and delayed response; had some difficulties following a 3-step command; was unable to answer questions requiring abstract reasoning; her remote memory was somewhat compromised; she worked with a normal pace but demonstrated decreased persistence; her thought process was linear but she tended to be vague in responding to questions; she denied auditory and visual hallucinations; her affect was restricted and she was frequently tearful; her insight and judgment appeared slightly compromised.  *Id.*  Plaintiff's score (23) on the Mini Mental State Exam fell within the mildly impaired range, but Dr. Khoi opined the result was due in part to Plaintiff's inconsistent effort.  *Id.*  Dr. Khoi observed Plaintiff had difficulties recalling the 3 items, but was able to recall them with cueing.  *Id.*

Dr. Khoi also noted the evaluation was "limited in scope[: i]t was based on only one session" and the "background and correlative information was considered to be limited."  AR 456. Dr. Khoi recommended the results of the evaluation be compared with available information from outside sources.  *Id.*  But with those restrictions in mind, Dr. Khoi diagnosed Plaintiff with an unspecified depressive disorder.  *Id.*  Dr. Khoi also assessed Plaintiff's abilities that are relevant to

16

adequate functioning in the workplace. *Id.* Dr. Khoi opined Plaintiff was not limited in her ability to understand and remember short and simple instructions or carry those out; not limited in the ability to maintain adequate pace and persistence to perform simple tasks; mildly limited in the ability to adapt to changes in job routine; mildly to moderately limited in her ability to understand and remember detailed instructions and carry them out; and moderately limited in the ability to maintain adequate pace and persistence to perform complex/detailed tasks, withstand the stress of a routine work day, and interact appropriately with co-workers and supervisors and the public on a regular basis. *Id.*

### b. Analysis

Although the ALJ stated he gave "much weight" to the opinion of Dr. Khoi (AR 32), Plaintiff argues the ALJ implicitly rejected Dr. Khoi's assessment that Plaintiff was moderately limited in interacting with coworkers and supervisors and in withstanding the stress of a normal workday by not including such limitations in the RFC. Pl.'s Mot. at 17 (citing AR 456). Defendant responds that the ALJ's limitation of Plaintiff to simple, repetitive, and unskilled work accommodates Plaintiff's mental health limitations. Def.'s Mot. at 5-7 (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1075-78 (9th Cir. 2007)). Thus, Defendant argues, the ALJ did not reject Dr. Khoi's opinions and did not err in failing to offer reasons for doing so. Because the Court remands the action for further proceedings, the ALJ may determine that a different RFC applies, and may give a different weight to the opinions of Dr. Khoi and others. Although the Court does not decide whether the ALJ implicitly rejected portions of Dr. Khoi's opinion at this point, it addresses the parties' arguments here in the interest of efficiency on remand.

First, and contrary to Defendant's argument, Ninth Circuit law does not "make[] it clear that an ALJ can adequately capture moderate mental limitations by accepting a medical source's translation of those limitations into a restriction to simple or unskilled work." Def.'s Mot. at 5. *Stubbs-Danielson* does not stand for the proposition that *all* moderate mental health limitations are accommodated by limiting a plaintiff to simple, repetitive and unskilled work. "[A]n ALJ's

assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." *Stubbs-Danielson*, 539 F.3d at 1174; *see also Turner v. Berryhill*, __ F. App'x __, 2017 WL 2814436, at *2 (9th Cir. June 28, 2017) ("An RFC determination limiting a claimant to 'simple, repetitive tasks' adequately captures limitations in concentration, persistence, or pace where the determination is consistent with the restrictions identified in the medical evidence."); *Mitchell v. Colvin*, 642 F. App'x 731, 733 (9th Cir. 2016) ("[T]he ALJ accounted for [the plaintiff's] moderate functional limitations [in concentration, persistence, and pace] in the residual functional capacity" by restricting the plaintiff to "simple, repetitive tasks."); *Sabin v. Astrue*, 337 F. App'x 617, 620-21 (9th Cir. 2009) (no error where ALJ found claimant could perform "simple and repetitive tasks on a consistent basis" despite moderate difficulties in concentration and pace)); *Bennett v. Colvin*, 202 F. Supp. 3d 1119, 1127 (N.D. Cal. 2016) ("[T]he ALJ did not err in translating his finding of a mild to moderate limitation in concentration, persistence, and pace into a restriction to light work and simple, repetitive tasks."). But *Stubbs-Danielson* is limited to limitations in concentration, persistence, and pace; it does not address other mental limitations, such as Plaintiff's moderate difficulties in interacting with coworkers and supervisors and in withstanding the stress of a normal workday.

Second, *Hoopai* supports Defendant's proposition that "moderate mental limitations do not automatically require RFC accommodation" (Def.'s Mot. at 6). Plaintiff argues *Hoopai* is inapposite because the case analyzed when an ALJ could use the grids or had to use the testimony of a VE. Pl.'s Reply at 6. While this is correct, the Ninth Circuit in *Hoopai* also noted it had "not previously held mild or moderate depression to be a sufficiently severe non-exertional limitation that significantly limits a claimant's ability to do work beyond the exertional limitation." *Id.* at 1077. This observation was not limited to situations in which the grids were used. *Id.*

On remand, the ALJ shall explain why he does or does not include the non-exertional limitations assessed by the sources to which he gives great weight.

18

**C.      Rejection of Plaintiff's Testimony**

  1.      <u>Plaintiff's Testimony</u>

Plaintiff testified the main reason she was not working was because of her chronic back pain.  AR 52.  It starts in her lower back and sometimes the pain radiates up to her neck, down her left leg, and to her foot.  AR 52, 55.  While her back pain is constant, the pain in her leg and foot only occurs when there is a lot of pressure on her foot, for example, when she steps on her foot. AR 53.  When she walks, the pain is the worse, and it radiates down her leg and to her foot.  AR 56.  Her leg gives out about twice a week, but as long as she takes her medication it will be fine. AR 54.  Dr. Van Der Wal from La Clinica gave her a cane, which she uses to get herself up and to walk on long trips.  AR 55.

She can sit for one to two hours, but then she has to move around; if she sits a certain way, her back pain flares up ad she has to change positions.  AR 56.  She can stand in one place for an hour and then has to sit down.  *Id.*  Walking causes her great pain.  *Id.*  She can lift less than ten pounds.  AR 57.

When she is depressed, Plaintiff cries every day.  AR 57.  Her depression comes and goes and interrupts her ability to concentrate.  AR 57-58.  She can read books, but has to read them repeatedly to remember them; she can watch television.  AR 58.  Sometimes, at night when she is by herself, she sees shadows; she also has a tendency to think someone is calling her.  AR 58-59.

Plaintiff has been prescribed different types of medications, but her doctors change her medications because they tend not to work for her.  AR 59.  The medications also have side effects: some cause drowsiness such that Plaintiff just dozes off while watching television; another caused her to start lactating.  AR 64.  At the time of the hearing, she was taking Norco, a pill for high blood pressure, and something prescribed by Pathways to Wellness.  AR 59.

Plaintiff sees a therapist (Dr. Stills) weekly, and also visits a psychiatrist at Pathways to Wellness weekly to adjust her medications.  AR 60.  At the time of the hearing, she had been going to Pathways for five months.  *Id.*

She lives with her 19-year-old daughter, who does the cooking and cleaning.  AR 61.  Her

friends take her around places or she takes AC transit; she does not have a car. *Id.* On a typical day, she gets up; takes her vitamins and medications; showers; eats breakfast; reviews her calendar to determine whether she has any appointments; and reads books, including child psychology books. AR 61-62. She does not have any hobbies or outside activities; sometimes she goes to church across the street from her house. AR 63. She does not have friends; her grandkids visit her, but are not left unsupervised with her. *Id.* She has taken no trips or vacations since February 2013. *Id.* She has trouble putting on her bra and shoes, difficulty climbing stairs, and sleeping at night. AR 65.

2.      The ALJ's Rejection of Plaintiff's Testimony

The ALJ summarized Plaintiff's testimony as follows:

> [S]he had gained weight since her last disability application because she had been diagnosed with a thyroid problem. She stated that she had obtained medical insurance coverage. She said she is not working because of low back pain that begins in her low back and radiates to her neck and her left foot. [She . . . ] sometimes sees shadows and she has the tendency to think someone is calling her.

AR 29. He did not acknowledge Plaintiff's testimony regarding the impact of her depression on her ability to concentrate and remember information, nor the side effects of her medication, which include drowsiness. *See id.* The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but found Plaintiff's statements regarding the intensity, persistence, and limiting effects of the statements were not entirely credible. *Id.* He did not identify which symptoms fell into that category, but generally referred the reader to "the reasons explained in this decision." AR 30. The undersigned understands this to refer to the lack of objective clinical evidence identifying a physiological cause for Plaintiff's pain. *See* AR 30-31, 33-34.

The ALJ also observed, based on the records before him, that there was a gap in Plaintiff's treatment for depression between the time she was referred by Dr. Van Der Wal for psychiatric care (AR 467) and the time she presented to Pathways to Wellness (AR 619). AR 34. He found this gap "significant" and thought it appeared to show Plaintiff "did not perceive herself as

needing any psychiatric care" despite her diagnoses of PTSD and MDD. AR 34.[4]

He made no finding of malingering. AR 29-30.

3. <u>Analysis</u>

Because the ALJ did not make any finding of malingering, his adverse credibility finding therefore must be based on clear and convincing substantial evidence. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008). In addition, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *see also Brown-Hunter v. Colvin*, 806 F.3d 487, 489, 492-94 (9th Cir. 2015) ("To ensure that our review of the ALJ's credibility determination is meaningful, and that the claimant's testimony is not rejected arbitrarily, we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination.").

The ALJ found Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms "not entirely credible." AR 29. But the ALJ does not actually identify what testimony or statements by Plaintiff he found not credible. *See* AR 29-34. This was error. *See Lester*, 81 F.3d at 834 ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."); *see also* SSR 96-7p (ALJ's credibility findings "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.").[5] The Court thus cannot review the sufficiency of the

---

[4] The ALJ found Plaintiff suffered from "an affective disorder" generally at Step Two, and did not separately list the PTSD and MDD Nurse Collins had diagnosed as severe impairments in that portion of his analysis. He nevertheless specifically considered these at Step Three when he evaluated whether Plaintiff met the listings for (1) depressive, bipolar and related disorders (Listing 12.04) and (2) anxiety and obsessive-compulsive disorders (Listing 12.06). AR 27. The SSA's new 12.15 listing for PTSD was added in 2017; when the ALJ issued his decision, PTSD was properly analyzed under listing 12.06. The ALJ concluded Plaintiff did not meet the listings for 12.04 and 12.06 because she did not have marked difficulties in activities of daily living, social functioning, or maintaining concentration, persistence, or pace, and had not had episodes of decompensation of extended duration. AR 27-28.

[5] SSR 96-7p was superseded by SSR 16-3p effective March 16, 2016. SSR 16-3p eliminates

1  ALJ's reasons for discounting Plaintiff's credibility.

2  To the extent the ALJ partially discredited Plaintiff because of the "large gap" in her

3  psychiatric care (AR 34), the documents provided to the Appeals Council establish Plaintiff

4  received consistent psychological care from MFT Stills, and that Dr. Van Der Wal provided some

5  psychiatric care to Plaintiff herself and attempted to provide further psychiatric care by connecting

6  Plaintiff with Dr. Ascari, a social worker, and a behavior modification specialist.

7  The ALJ noted that Plaintiff's testimony at the hearing was "responsive and spontaneous"

8  (AR 34), which would be inconsistent with some of the treatment records indicating she needs

9  repetition to understand and that her concentration is somewhat limited, but this does not

10  contradict her testimony in any way.  He also noted Plaintiff had no difficulty sitting, standing, or

11  walking during her testimony.  *See id.*  Whether Plaintiff was able to sit or stand during the 51

12  minutes the hearing lasted is not inconsistent with any of Plaintiff's testimony.  *See* AR 56

13  (Plaintiff can sit for one to two hours, but then she has to move around; if she sits a certain way,

14  her back pain flares up ad she has to change positions; she can stand in one place for an hour and

15  then has to sit down).  It is possible the ALJ's observation did contradict Plaintiff's testimony that

16  "[w]alking causes her great pain" (AR 56), but neither Plaintiff nor the ALJ clarified whether pain

17  occurred with any walking, or only for certain distances.

18  The undersigned finds the ALJ did not make sufficiently specific credibility findings, and

19  to the extent he offered any specific reasons for rejecting her testimony, the reasons he offered

20  were not clear and convincing, nor supported by substantial evidence.

21  **D.    Severity of Impairments**

22  Impairments are "severe" at Step Two of the sequential analysis if they are more than de

23  minimis; they are "not severe only if evidence establishes a slight abnormality that has no more

24

---

25  language pertaining to a claimant's credibility, and reflects recommendations that the SSA clarify
"that subjective symptom evaluation is not an examination of an individual's character, but rather

26  is an evidence-based analysis of the administrative record to determine whether the nature,
intensity, frequency, or severity of an individual's symptoms impact his or her ability to work."

27  SSR 16-3p at 1 n.1.  SSR 96-7p applies to the Court's review of the ALJ's decision, which was
issued before March 16, 2016.

28

United States District Court
Northern District of California

than a minimal effect on an individual's ability to work." *Smolen*, 80 F.3d at 1290. The ALJ found Plaintiff had severe impairments, including obesity, degenerative joint disease of the left knee, and an affective disorder. AR 26. Plaintiff argues the ALJ erred in failing to include her chronic lower back pain, lumbar spondylosis, sacroiliac dysfunction, insomnia, and incontinence at Step Two. Pl.'s Mot. at 10-12. As a result of this error, she contends the ALJ made an erroneous RFC finding. *Id.* at 23; Pl.'s Reply at 4.

      1.   <u>Back Conditions</u>

There is ample evidence in the record supporting the existence of Plaintiff's back pain, including diagnosis and treatment by Dr. Van Der Wal, long-term pain medication, referral to physical therapy, and prescription of a cane. *See supra*. In addition, Plaintiff repeatedly visited Alta Bates Summit Medical Center complaining of back pain, and her treaters there found at least some abnormalities when they obtained images of her back and knee:

A January 2012 x-ray of Plaintiff's lumbosacral spine showed normal alignment, with mildly narrowed disc spaces, no compression fracture, spondylolysis or spondylolisthesis, the facet and sacroiliac joints are unremarkable; however, the marginal osteophytes from L1-L2 through L4-L5 had worsened since a 2007 x-ray. AR 675. Dr. Philip Rich, M.D.'s impression was that the x-ray exhibited mild lumbar spondylosis, progressive since August 2007. *Id.*

Plaintiff presented to the emergency department at Alta Bates Summit on June 16, 2014 complaining that she had been suffering leg pain for one month; after performing a number of tests and imaging studies, she was diagnosed with back, leg, and neuropathic pain. AR 518-42. She was discharged the same day with Hydrocodone/acetaminophen and gabapentin. AR 518-19.

She returned to the emergency department ten days later with the same complaints, and described "constant waxing and waning 'burning' pain from left lower back to groin to knee and foot. Worse with walking. No injury. Pain 9/10. Nothing makes better." AR 548. A knee exam was unremarkable except for possible patelo-femoral syndrome; she was diagnosed with left knee pain, sacroiliac dysfunction, and discharged with additional medication. AR 550. An x-ray of her left knee showed moderate narrowing of the medial joint space and mild narrowing of the

patellofemoral joint space; no knee joint effusion; no significant osteophyte formation; and no appreciable soft tissue swelling. AR 555. The x-ray did show "tiny punctate densities projecting between the femoral condyles and patella on the lateral view . . . Unclear etiology or clinical significance" and "[d]egenerative changes of the medial greater than patellofemoral." *Id.*

Plaintiff returned to the emergency department on January 6, 2015. AR 570. She complained of back, chest, and vaginal pain. AR 571. She left without being seen by a physician. AR 570-71.

On January 25, 2015, she returned with a chief complaint of back pain. AR 578-79. She was discharged with medication. *Id.* The ER notes state Plaintiff described pain in her lumbar spinal area that was worse with movement, radiated down her left leg, upper back and chest; her symptoms were severe; Norco did not help her pain; she rated her pain 10 out of 10; she walked normally. AR 580. Chest x-rays were unremarkable, EKG showed abnormal T waves. AR 584. She was diagnosed with chronic back pain and atypical chest pain, prescribed valium, and discharged. AR 583.

On multiple visits, the physician who examined Plaintiff reported lower back tenderness, straight leg test positive for low back (only) pain, and sacroiliac tenderness. AR 521, 549, 637, 692.

The ALJ nonetheless decided not to include chronic lower back pain, lumbar spondylosis, or sacroiliac dysfunction as severe impairments at Step Two because "pain [is a] symptom[], not [a] medically determinable impairment[.]" AR 26. Plaintiff was diagnosed, with the use of x-rays, with lumbar spondylosis and sacroiliac dysfunction, conditions that can cause low back pain.[6] Plaintiff complained of excruciating low back pain for years and testified the main reason she could not work was her back pain; her doctors identified physical conditions that might be the

---

[6] *See, e.g.*, K. Middleton and D. Fish, Lumbar Spondylosis: Clinical Presentation and Treatment Approaches, Current Review Musculoskeletal Medicine (2009 June), available online at www.ncbi.nlm.nih.gov/pmc/aricles/PMC2697338 (last visited Dec. 12, 2017); R. Rashbaum et al., Sacroiliac Joint Pain and its Treatment, Clinical Spine Surgery (2016 Mar.), abstract available online at www.ncbi.nlm.nih.gov/pubmed/26889985 (last visited Dec. 12, 2017).

cause of that pain: mild spondylosis and sacroiliac dysfunction. It was error for the ALJ not to list those as severe conditions at Step Two. *See Smolen*, 80 F.3d at 1290-92.

However, this error was harmless. Plaintiff argues the ALJ's improper omission of all back-related impairments at Step Two led to an unsupported RFC determination that did not reflect Plaintiff's back-related impairments or her back pain. *See* Pl.'s Mot. at 10-12, 23. This is incorrect. Dr. Farah Rana, M.D., is a neurologist who examined Plaintiff on behalf of the SSA. AR 449. She performed an internal medicine evaluation, and specifically evaluated Plaintiff's back pain. AR 449-51. She observed Plaintiff appeared very depressed and was weeping; she exhibited mild lower back tenderness and normal range of motion at lumbosacral spine; she did not cooperate with the straight leg raising test, complaining of pain in her legs; her gait was stable; she did not use an assistive device; and the knee joints were non-tender with full range of motion. AR 450. Dr. Rana's diagnostic impression was of "chronic lower back pain most likely secondary to degenerative disc or degenerative joint disease." AR 451.[7] Far from rejecting Dr. Rana's opinion, the ALJ gave it "great weight." AR 31. The ALJ states he considered all impairments, regardless of severity, in combination in assessing Plaintiff's RFC. AR 26. Indeed, in assessing Plaintiff's RFC, the ALJ fully adopts the limitations Dr. Rana set forth by limiting Plaintiff to light work with additional postural limitations. Dr. Rana opined Plaintiff could stand and walk a total of six hours in an eight hour day, with breaks; and could sit for a total of six hours in an eight hour day, with breaks. AR 451. The ALJ determined Plaintiff possessed the RFC to perform light work. AR 29. "[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." SSR 83-10; *see Nerio v. Colvin*, 2015 WL 12656242, at *5 (N.D. Cal. May 4, 2015) ("Performing the full range of light work includes being able to stand or walk, off and on, 'for a total of approximately 6 hours of an 8-hour workday.'" (quoting SSR 83-10)); *Guajardo v.*

---

[7] Spondylosis can be used generically to apply to any and all degenerative conditions disk, vertebral or lumbar joints. *See Lumbar Spondylosis*, supra n.6.

*Astrue*, 2009 WL 2230851, at *6 (E.D. Cal. July 24, 2009) ("A full range of 'light work' contemplates the ability to stand or walk six hours out of an eight-hour work day." (citing SSR 83-10)). Dr. Rana also opined Plaintiff would experience postural limitations as a result of her back pain, and limited her to stooping, bending, kneeling, crouching, and climbing only occasionally. AR 451. The ALJ adopted these limitations verbatim. AR 29.

Plaintiff does not acknowledge Dr. Rana's evaluation, the great weight the ALJ gave to that evaluation and his adoption of the limitations stated therein. *See* Pl.'s Mot.; *see also* Pl.'s Reply. She also fails to explain how the diagnoses of chronic lower back pain, mild lumbar spondylosis and sacroiliac joint dysfunction imposed greater functional limitations than Dr. Rana's impression of "chronic lower back pain most probably secondary to degenerative disc disease" (AR 451). While the ALJ did not specifically discuss either spondylosis or sacroiliac dysfunction, and stated he only considered Plaintiff's "subjective back pain" in the context of her obesity, the ALJ's adoption of Dr. Rana's functional limitations based on back pain secondary to degenerative disc or joint disease when assessing Plaintiff's RFC makes any error he made in omitting the other back impairments at Step Two harmless.

2. <u>Insomnia and Incontinence</u>

There also is evidence in the record to support insomnia (*see supra*) and incontinence (*see* AR 624, 753-54, 761-62, 799, 804). The ALJ addressed neither impairment and did not list them as severe impairments at Step Two, despite the fact these could more than minimally affect Plaintiff's ability to work by making her more fatigued and needing more frequent, unscheduled breaks. It also was error for the ALJ not to list those conditions at Step Two.[8] Because there is no indication the ALJ considered the limitations created by these impairments when assessing Plaintiff's RFC, the undersigned cannot find that error was harmless. *See infra*.

_____

[8] Defendant argues the ALJ rejected these conditions as serious impairments because the only evidence for them was Plaintiff's subjective testimony. Def.'s Mot. at 4. That is not a reason offered by the ALJ, who does not even mention incontinence and only refers in passing to Plaintiff's statement that her medications make her feel tired and sleepy. AR 29-34. The Court will not review the adequacy of the ALJ's decision based on the post hoc rationalization offered by the Commissioner on appeal.

**CONCLUSION**

Based on the foregoing analysis, the Court finds the ALJ erred by (1) failing to develop the record; (2) failing to provide germane reasons for rejecting the opinion of MFT Stills; (3) failing to provide any reason for rejecting the limitations Dr. Van Der Wal noted throughout the La Clinica records; (4) failing to make sufficiently specific credibility findings, and offering clear and convincing reasons for discrediting Plaintiff's testimony; and (5) failing to consider Plaintiff's insomnia and incontinence at Step Two. These errors required reversal.

Plaintiff asks the Court not for an immediate award of benefits, but to remand the case for further proceedings based on the ALJ's failure to develop the record. Pl.'s Mot. at 25. This is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (typically, when a court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." (citations omitted)); *Taylor v. Comm'r of Soc. Sec.*, 659 F.3d 1228, 1235 (9th Cir. 2011) ("Remand for further proceedings is appropriate where there are outstanding issues that must be resolved before a disability determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." (reversing and remanding for the consideration of new evidence instead of awarding benefits)).

On remand, the ALJ shall consider the full medical record. *See Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000) ("Because neither the ALJ nor the vocational expert had the full picture before them, remand for further proceedings is particularly appropriate."). In addition, because this evidence may affect other portions of the decision, the ALJ shall determine if any further evaluation is required based on the issues Plaintiff raises here.

Because the errors requiring remand are also at the root of Plaintiff's challenges to the ALJ's RFC, his finding regarding changed circumstances, and the hypotheticals he posed to the VE (Pl.'s Mot. at 23-25; Def.'s Mot. at 1 n.5), the Court will not address these remaining arguments at this time.

1        For these reasons, the Court **GRANTS IN PART** Plaintiff's Motion for Summary

2 Judgment, **DENIES** Defendant's Cross-Motion for Summary Judgment, and **REVERSES** the

3 ALJ's decision.  This case is **REMANDED** for further administrative proceedings in accordance

4 with this Order.

5        **IT IS SO ORDERED.**

6

7 Dated: December 18, 2017

8 _____

9 MARIA-ELENA JAMES
United States Magistrate Judge